[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff husband against the defendant wife seeking dissolution of their marriage on the grounds of irretrievable breakdown and other relief. The defendant filed a cross complaint dated December 16, 1996 seeking the same relief but also alleging adultery on the part of the plaintiff.
At the hearing, the parties appeared with counsel and offered evidence including their testimony, documentary exhibits, and financial affidavits. They also submitted written proposed orders. The parties stipulated to certain facts and entered into an agreement partially resolving the issues to be determined by the court. The court approved the agreement of the parties, and will reference that agreement in entering orders.
Based upon the evidence, the court finds as follows. The court has jurisdiction, and all statutory stays have expired. The parties were intermarried on February 14, 1972 in East Hartford, Connecticut. At the time of their marriage, each had a child from a prior marriage. The plaintiff husband adopted the defendant's four year old daughter, Erin, but the defendant did not adopt the plaintiff's two year old daughter, Faith. Three children were born to the parties during the marriage, Michael, Adam, and Ryan. Ryan, who was born on May 26, 1981, is the only child of the parties who is still a minor. CT Page 12158
The plaintiff, now forty-seven, worked at Southern New England Telephone from the time of his graduation from high school at age eighteen until the summer of 1995, when he was offered a "golden handshake" in the form of an early retirement bonus which he thought he could not refuse. Although he was able to find work in the same industry within a week, the loss of his job contributed to depression which he developed at about that time and for which he still takes medication. His illness does not affect his ability to work. He continues to work, and with various overtime available to him earns $940 per week, which the court finds is his earning capacity.
The defendant, now forty-eight, worked in banking prior to the birth of the parties' first son. While the children were growing up, she operated a private day care business for eighteen years and worked as an educational counselor for Discovery Toys on a part-time basis. She gave up both businesses when she was hospitalized for what she describes as situational depression. She experienced three separate hospitalizations in 1996, the last of them in September after she attempted suicide. Her hospitalizations and attendant psychiatric and counseling care were as a result of her beliefs during the fall of 1995 and throughout 1996 that her husband was having an extramarital affair and was planning to divorce her. She continues to take medication to treat her depression. The plaintiff unilaterally replaced his medical insurance with a plan that does not provide coverage for these mental health expenses. Since her last hospitalization in 1996, the defendant worked two or three jobs at a time, almost always working between sixty and eighty or more hours per week. In May, 1998, she began working almost exclusively as a temporary clerk at the United States Post Office but occasionally works part time at a video store. Although she is not entitled to a guaranteed forty hour week at the post office, she frequently works that many hours and often works in excess of forty hours. Her average weekly earnings are $510 per week plus $143 in overtime. Her earning capacity, so long as she continues to be employed by the post office and remains healthy, is $510 per week. The defendant has substantially contributed to the college educational expenses of the parties' two oldest sons since the commencement of this action, increasing her debt by a large amount. The plaintiff has made no comparable contribution.
In the fall of 1995, the defendant first learned that the plaintiff had developed a personal relationship with a woman who CT Page 12159 worked in church activities with him. Although the defendant acknowledges that he met this woman in Massachusetts one evening at a time he told the defendant that he would be someplace else, and that the meeting was a "bad choice" on his part, he does not characterize their relationship as anything more than a very close friendship. There was insufficient evidence presented to permit the court to make a finding that the plaintiff had committed adultery. Nevertheless, the court finds that the plaintiff's relationship and his admitted refusal to help the defendant understand or deal with that relationship were primary causes for the breakdown of the marriage.
The parties' marital assets consist of the following:
a. House, East Hartford $ 12,272 (Equity)
b. Smith Barney Retirement Account $303,483 (In plaintiff's name)
c. World Com stock options $ 2,850
TOTAL $318,605
In addition, the parties each have personal items and automobiles, and the plaintiff has stock in Southern New England Telephone Company held in joint tenancy with his mother. That stock was acquired by his parents and his mother receives current dividends.
The court has considered all of the evidence and its findings in light of the criteria in General Statutes 46b-62, 46b-81, and46b-82. The court, in shaping its orders, must provide protection and some financial security in the future for the defendant, who would otherwise be at economic risk. See, Sweet v. Sweet,190 Conn. 657 (1983).
Pursuant to the stipulations and agreements of the parties, the court decrees and orders:
The marriage of the parties has broken down irretrievably, and the same is hereby dissolved.
The plaintiff will pay the defendant child support at the rate of $135 per week, which amount is consistent with the Child Support Guidelines, commencing the week of October 9, 1998 and continuing until the minor child has reached the age of eighteen CT Page 12160 or has graduated from high school, whichever shall occur later, but in no event past the minor child's nineteenth birthday. The plaintiff will maintain medical insurance for the benefit of the children at his expense so long as it is available to him through his current or former employment. The signature of the defendant shall constitute a valid authorization to the insurer for the purpose of processing an insurance reimbursement payment to the medical provider or the defendant.
The parties shall have joint custody of the minor child, whose primary residence will be with the defendant, with the plaintiff having reasonable parenting opportunities. The child, who is seventeen, will be permitted to make his own arrangements for such visitation. The defendant shall keep the plaintiff informed of the child's school activities, grades, meetings, conferences, problems, and similar matters.
The Citibank Advantage debt of $13,831.28 and the Visa debt of $2,421.82 are joint debts, and will be the subject of further orders. The debts on the plaintiffs financial affidavit for property taxes, Hartford Hospital, the Institute of Living, and Joan Hall, and the parties' debt to Nancy McLaughlin are disputed and will be the subject of further orders. All other debts listed on each party's financial affidavit are the sole responsibility of the party on whose affidavit the debt appears, and that party shall hold the other harmless with respect to such debts.
The plaintiff shall quit claim his interest in the marital home at 33 Kingston Drive, East Hartford, Connecticut to the defendant.
The court makes the following additional orders:
The plaintiff shall pay the defendant the sum of $125.00 per week as periodic alimony until she reaches the age of sixty five, marries, or cohabitates within the meaning of General Statutes Section 46b-86 (b). Said alimony shall be modifiable to amount upon a substantial change in the circumstances of either party, but shall not be modifiable as to term.
The plaintiff shall keep his World Com stock and the SNET stock he owns jointly with his mother.
The plaintiff shall transfer to the defendant by way of a Qualified Domestic Relations Order sixty (60%) percent of the CT Page 12161 Smith Barney Retirement Account. The plaintiff is ordered to draft the QDRO and to transmit an original of it signed by the plaintiff within thirty days hereof.
Each party shall have responsibility for one half of the joint debts of the parties of $13,831.28 to Citibank Advantage and $2,421.82 to Visa. The plaintiff shall assume and have responsibility for one half of the following debts listed on the defendant's financial affidavit: the $2,000 debt to Hartford Hospital/Institute of Living and the $350 debt to Dr. Moscow. The plaintiff shall assume and have responsibility for the debt of $3,893 due to Joan Hall as shown on the defendant's financial affidavit. The plaintiff shall assume and have responsibility for the debt to Nancy McLaughlin shown on his financial affidavit.
The plaintiff shall maintain his existing First Colony life insurance policy at his expense, and shall name the defendant as beneficiary to the extent of $150,000 of that policy as long as he has an obligation to pay support or alimony. The amount of insurance the plaintiff is required to maintain is based upon the amount of alimony he shall be required to pay.
The plaintiff shall cause the defendant to be covered under his existing health and medical insurance by way of COBRA, and he shall pay her premiums for a period of the shorter of eighteen months or until she is eligible to receive free health insurance through her employer.
Each party shall have title to the automobile listed on his or her financial affidavit. The plaintiff shall have his personal property from the marital residence, including the table saw, the ceramic Christmas village.
Plaintiff's counsel shall prepare a judgment file within thirty days.
Judgment shall enter in accordance with these findings and orders.
By the Court,
GRUENDEL, J.